# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JAMES H. CAMPBELL,      :

       **Petitioner**    :

                      **CIVIL ACTION NO. 3:16-0524**

    **v.**           :

                       **(Judge Mannion)**

L.J. ODDO, Warden,      :

      **Respondent**    :

## <u>MEMORANDUM</u>

Petitioner, James H. Campbell, an inmate currently confined in the Allenwood United States Penitentiary ("USP-Allenwood"), White Deer, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1, petition). Petitioner alleges that his due process rights were violated during the course of two separate prison disciplinary hearings at his prior place of confinement, USP-Victorville. Specifically, he raises the following issues in his petition for writ of habeas corpus:

A.  Incident Report No. 2333932

      1.    Adequate staff representative was not provided.

      2.    Witnesses were denied.

      3.    Petitioner's written statement was denied, his oral one misquoted.

      4.    The DHO decision was not based on facts or the greater weight of evidence.

B. Incident Report No. 2333936

1.  The Discipline Hearing Officer's decision was not based on fact or the greater weight of evidence.
2.  The UDC/DHO proceedings were invalid.

(Doc. 2, Memorandum in Support of Petition).

For relief, Petitioner requests an order directing Respondent to expunge both incident reports, or a reduction in the charges. The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.   **Background**

A.  **Incident Report No. 2333932**

On August 1, 2012 at approximately 2:02 p.m., Campbell was served with Report No. 23339392. (Doc. 7-1 at 19, Incident Report). The incident report reads as follows:

On July 31, 2012, at approx. 8:00 am, I completed a search of cell 132 in unit 2A (the search began on 7/30/12) where inmate Campbell, James, 29124-004 lives. In the cell I discovered multiple items which could be used to facilitate an escape. Inside of Campbell's locker was a box, with Campbell's name on it, insider were multiple hazardous tools; an inmate manufactured wrench fashioned from hobby craft sticks, it had a piece of metal shaped to remove or tighten a hex nut; 4 picks fashioned from small cylindrical pieces of metal and hobby craft sticks to manipulate security locking device; a slotted type screwdriver fashioned from nail clippers and hobby sticks; other small drivers

2

fashioned from nail clippers and tweezers; a sharp scalpel type tool fashioned from nail clippers and hobby sticks; 4 inmate manufactured plier type tools of various sizes fashioned from hobby sticks and rubber bands; and inmate manufactured cutting tool fashioned from hobby sticks and a razor blade; a bottle containing black liquid; a bottle of OD green color paint, a bottle of grey color paint; a roll of aluminum tape and a roll of brown tape. Inside of his locker 2 rolls of masking tape. On the floor underneath the lower bunk was a cardboard box with a cover. I opened the box and removed several papers with inmate Campbell's name and register number on them. Inside the box I found a false panel glued to the inside of the box. Concealed behind it was a large piece of metal weighing approximately 10 pounds and shaped at an "L" angle. During the search I discovered the floor between the wall of the cell and the toilette sounded hollow when I struck it. Upon further inspection I removed a piece of art board that was painted gray, blend in with the surrounding floor. Upon removing the board, I discovered the concrete floor had been chipped away into a deep hole and concealed two inmate manufactured weapons. One was a silver colored metal shaped to a blunt point on the blade end, and was sharpened on its underside. It was approximately 7.75 inches in length. The second was an "all thread type" material which was sharpened on one end and had a black boot lace fashioned into a handle and lanyard. It was approximately 8.5 inches in length.

On 07/30/2012, during a search of the cell I discovered a large amount of boot laces and cloth cut into strips inside Campbell's locker. Concealed between inmate clothing was a thick piece of cardboard with multiple holes placed into rows along it. There were strips of cardboard banded together that were a longer than the piece with holes. Pieces of mattress cover were cut to approximately the same length of the cardboard strips. There was a TV cable, approximately 3 feet in length found with these items.

Id. On August 6, 2012, Petitioner appeared before the Unit Discipline

Committee ("UDC"). (See Id., Committee Action). It was noted that "based on

the severity of the charge, UDC is referring to the DHO" and "if found guilty, UDC recommends loss of good time, DS, loss of privileges." Id. During the UDC hearing, Counselor, D. Elliott, informed Campbell of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7-1 at 23, Inmate Rights at Discipline Hearing).

Also on August 6, 2012, Campbell was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Doc. 7-1 at 25). Campbell requested staff representation, as well as sixteen (16) witnesses. Id.

On January 13, 2015[1], Petitioner appeared for a hearing before DHO, Todd W. Cerney. (Doc. 7-2 at 29-34, DHO Report). He was represented by Correctional Counselor, J. Neylon. Id. At the onset of the hearing, Campbell was advised of his rights before the DHO and indicated he understood them and chose to provide the following statement:

> "I had these, but these tools are contraband not hazardous. Many officers saw these things for years with me. They would see me with the box and go through it. He (Officer Maring) found the tools

---

[1]The original DHO hearing for these charges was held on October 17, 2012. The original charge of escape was found to be without merit and Campbell was found to have committed the prohibited acts of possession and/or manufacturing of a hazardous tool, a Code 108 violation, and destruction or damage to government property, a Code 218 violation. Campbell then grieved this decision which resulted in the Regional Office remanding the case for a re-hearing, which was held on January 13, 2015 and is the hearing Campbell challenges within.

4

in the hole so he rethought what the hole was. The escape charge was thrown out and the 108 says that the tools have to be in reference to facilitating an escape.

Id. No procedural issues were raised. Id. The following persons were called as witnesses at this hearing and appeared:

Upon notification of the necessity of a re-hearing, this DHO met with CAMPBELL to discuss witnesses in reference to the impending DHO hearing. Upon review of documents and previous hearings, the DHO noted a list of 16 inmate witnesses, who were cited on the BP-294 as being able to testify to innocuous behaviors of CAMPBELL in reference to the charged tools. These were things such as making shelves, clothing hooks, taking part in eye glass repair and making vent covers and other inmate use items. The DHO at this time, advised CAMPBELL, given this seemingly repetitive testimony, the opportunity to select three witnesses from the "list' or others. At this time, CAMPBELL requested Branon # 78653-098, Analla # 85581-071 and incident report writer, G. Maring. As the requested inmate witnesses were not housed at USP Allenwood, this DHO requested written statements from them at their assigned facilities. Signed written statements from the inmates were received and disclosed at this hearing.

CAMPBELL's questioning of his intended witnesses (through written statement) focused on whether or not his witnesses had seem him making items such as shelves, supports, clothing, hooks, game tables, etc. Further, whether or not they had seen CAMPBELL fixing or making items for other inmates. Additionally, whether or not staff at the facility (USP Victorville) ever saw CAMPBELL using tools and/or had taken any of them. Finally, CAMPBELL had wondered if any of his witnesses had ever seen him possessing tools that might be used for an escape or possibility of wounding someone.

Id.

In addition to the Incident Report and Investigation, the DHO considered

the following documentary evidence: (1) E-mail message from T. Cerney, to

B. Chambers and D. Elliott; (2) Hand written "Witness Statement" from

Branon, Mark # 78653-098, dated December 5, 2014; (3) Typed statement

"Witness Statement" from Analla, Sidi #85581-071, dated December 9, 2014;

(4) E-mail message from D. Elliott to C. Jackson, subj: Campbell, J. #29124-

004, dated August 6, 2012; (5) Evidence photographs taken on July 31, 2012.

Id. at 31.

After considering the weight of all the documentary evidence, the DHO

found the following:

> The DHO noted the original charge of escape was found without
> merit. Despite the reporting officers' belief that the discovered
> items in this case were capable of facilitating an escape, no
> evidence of escape was shown. With this, the charge was
> expunged. In reference to the destruction of government property
> charge, the DHO noted report writer, Officer Maring, finding a
> bottle of gray pain. Although no information specifically revealed
> CAMPBELL being involved in the making of the area where the
> contraband items were discovered within the cell floor, the fact he
> maintained this gray paint and the piece of art board cited in the
> body of the report covering the area was painted gray in an
> attempt to blend in with the flooring. As such, the DHO believed
> CAMPBELL in likely making or amending this damaged area.
> Given the gray colored covered access to the area (CAMPBELL
> possessed gray paint), the area was believed altered and/or
> damaged via CAMPBELL's actions. Noted, no dollar amount was
> cited in reference to this floor damage. However, the DHO fully
> believed given the fact that obvious damage was there, it held a

monetary value. With this, the 200 series destruction of damage to government property charge to that was amended to that of a Code 329 lessor charge denoting damage under $100. Finally, the possession and/or manufacturing of a hazardous tool was upheld. As previously cited, whether or not the discovered contraband as testified by CAMPBELL and discovered by Maring held the ability to be used in any escape act was unknown; however, the specific items and types were believed hazardous in the fact that they had the ability to cause harm to another (also an element of the Code 108 infraction). Officer Maring cited a tool referenced as a "scalpel" type tool made from nail clippers and hobby sticks. Further, a cutting tool that was made from hobby sticks and a razor blade. Finally, two longer pieces of metal ranging from 7¾ inches to 8½ inches were discovered by Maring. They were noted as sharpened. Photographic evidence showed multiple contraband tools and/or items with incised or pointed edges. The DHO believed any of these items held the capability of harming or wounding another.

After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, supports the finding, CAMPBELL, James, Register No. 29124-004, committed the prohibited acts of Possession, manufacture, introduction, or loss of a hazardous tool and Destroying, altering or damaging government property, or the property of another person, having a value of $100.00 or less, Codes 108 and 329, on 7/31/12, at or about 10:30 am, Unit 2 A, cell 132, at USP Allenwood, PA.

Id. The DHO sanctioned Campbell to thirty (30) days disciplinary segregation; loss of forty-one (41) days Good Conduct Time; and twelve (12) month loss of visitation privileges (previously served) on the Code 108 violation, and fifteen (15) days disciplinary segregation; loss of fourteen (14) days Good Conduct Time; and three (3) month loss of e-mail privileges (previously

served) on the Code 329 violation. Id. The DHO documented his reasons for the sanctions given as follows:

> CAMPBELL's possession of multiple sharp items threatened the orderly running of the correctional facility. For inmates to retain items of this type, not known to be provided to them through institutional channels indicates defiance and refusal to follow established and known policy. Limits are placed on inmate property to persuade them not to possess unnecessary or potentially dangerous items. These can be potentially be used to harm to another. Accordingly, disallowed good conduct time is sanctioned in an effort to punish CAMPBELL for his behavior, loss of e-mail to deter him from it in the future and suspended disciplinary segregation sanctioned to aid in the maintenance of clear conduct.

> CAMPBELL's destruction of Government property (cell floor) limited the availability of the item for inmate use and must ultimately be repaired or replaced. Accordingly, disallowed good conduct time is sanctioned in an effort to punish CAMPBELL for his behavior, loss of e-mail to deter him from it in the future and suspended disciplinary segregation sanctioned to aid in the maintenance of clear conduct.

Id. Campbell was advised of his appeal rights at the conclusion of the hearing. Id.

## B.  Incident Report No. 2333936

On August 1, 2012 at approximately 2:01 p.m., Campbell was served with Incident Report No. 23339396. (Doc. 7-1 at 62, Incident Report). The incident report reads as follows:

> On July 31, 2012, at approx. 10:30 am, while performing a cell

search in unit 2A cell 132 where inmate Campbell, James, 29124-004 resides; I discovered that the floor between the wall of the cell and the toilette sounded hollow when struck. I used my boot to kick the floor and it gave in. I removed a piece of art board that was painted to camouflage in with the surrounding floor. Upon removing the board I discovered the concrete floor had been chipped away into a deep hole and concealed two inmate manufactured weapons. The first was silver colored metal shaped to a blunt point on the blade end, and was sharpened on its underside. It was approximately 7.75 inches in length. The other was an "all thread type" material which was sharpened on one end and had a black boot lace fashioned into a handle and lanyard. It was approximately 8.5 inches in length. I recovered the weapons and relinquished custody of them to Lt. M. Mendez.

Id. On August 6, 2012, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Id., Committee Action). Petitioner made the following statement before the UDC: "It's not a weapon. It's a chisel. I use it as a tool for digging. It's not for escape. The hole is just for storage." Id. It was noted that "based upon the severity of the charge, UDC is referring to the DHO" and "if found guilty, UDC recommends loss of good time, DS, loss of privileges." Id. During the UDC hearing, Counselor, D. Elliott, informed Campbell of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7-1 at 66, Inmate Rights at Discipline Hearing).

Also on August 6, 2012, Campbell was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Doc. 7-1 at 68). Campbell

requested staff representation, but declined to call any witnesses. Id.

On October 17, 2012, Petitioner appeared for a hearing before DHO, R. A. Byrd. (Doc. 7-2 at 72-74, DHO Report). He was represented by Lesa Thomas. Id. At the onset of the hearing, Campbell was advised of his rights before the DHO and indicated he understood them and chose to provide the following statement: "This is a tool, not a weapon." Id. No procedural issues were raised, and no witnesses were called. Id.

In addition to the Incident Report and Investigation, the DHO considered photographs. Id.

After considering the weight of all the documentary evidence, the DHO found the following:

> The inmate's due process rights were read and reviewed by the DHO to the inmate. The DHO confirmed the inmate received a copy of his incident report, did not want to call any witnesses. The inmate was afforded the opportunity to meet with his staff representative. The inmate understood his due process rights, and was ready to proceed with the DHO Hearing.
>
> The DHO finds inmate James CAMPBELL, Register Number 29124-004 committed the prohibited act of Possession of a Weapon in violation of Code 104. The DHO relies upon the reporting officer's statement which indicates on July 31, 2012 at approximately 10:30 a.m., while performing a search in Unit 2A, cell 132, where inmate CAMPBELL resides; the reporting officer discovered that the floor between the wall of the cell and the toilette sounded hallow when struck. The reporting officer used his boot to kick the floor and it gave in. The reporting officer

removed a piece of art board that was painted to camouflage in with the surrounding floor. Upon removing the board the reporting officer discovered the concrete floor had been chipped away into a deep hole and concealed two inmate manufactured weapons. The first was a silver colored metal shaped to a blunt point on the blade end, and was sharpened on its underside. It was approximately 7.75 inches in length. The other was an "all thread type" material which was sharpened on one end and had a black boot lace fashioned into a handle and lanyard. It was approximately 8.5 inches in length. The reporting officer recovered the weapons.

Although the inmate denies the charges, the DHO based her decision on the greater weight of the evidence. Specifically, the DHO relies upon the reporting officer's eyewitness statement. The DHO found no reason to question the validity of the reporting officer, since his observations were made strictly in performance of his duties, without any reason to submit a false report.

The DHO relies upon the photograph of the weapons which depicts a sharpened instrument capable of inflicting serious life-threatening injuries and death.

Based upon the greater weight of the evidence, the DHO is convinced James CAMPBELL, Register Number 29124-004, was in Possession of a Weapon in violation of Code 104.

Id. The DHO sanctioned Campbell to thirty (30) days disciplinary segregation; loss of forty-one (41) days Good Conduct Time; and one (12) year loss of visitation privileges. Id. The DHO documented her reasons for the sanctions given as follows:

Any action on the part of an inmate to possess a weapon seriously jeopardizes the security of the facility and the safety of

all others. The disallowance of good conduct time was imposed based on the severity of the offense. Other sanctions were given to serve as punishment for the inmate's inappropriate behavior, and to affect the inmate's future behavior.

Id. Campbell was advised of his appeal rights at the conclusion of the hearing.

Id.


## II.    Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear

before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the

prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have

witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

### A. Incident Report No. 2333932

In the instant case it is clear from the record that Campbell was afforded all of the required procedural rights set forth in Wolff. Campbell received written notice of the charged misconduct when he was given a copy of the incident report on August 1, 2012 at 2:02 p.m., within 24 hours of the July 31, 2012 incident. Campbell's UDC hearing was conducted on August 6, 2012, within three working days after the incident report was written. Petitioner's initial DHO hearing was held on November 2, 2012, wherein the charge of

escape was dismissed. Petitioner then proceeded through the appropriate channels of challenging the misconduct, which resulted in a remand on October 13, 2014 and a rehearing on January 23, 2015. Campbell appeared before an impartial hearing body, where he was represented by a staff member, had the ability to call witnesses and present documentary evidence.

To the extent that Campbell claims that witnesses were denied and, his staff representative was not adequate[2], in that, the staff representative failed "to call or interview reporting officer Maring to give non-redundant testimony as to how any of the items at issue were likely to be used to facility escape or wounding," the Court rejects Petitioner's claims. Officer Maring was requested to provide testimony and the DHO denied the request as follows:

> The DHO noted CAMPBELL requesting report writer, G. Maring to provide testimony at this hearing. In written questions he requested answers by Maring. CAMPBELL, in essence questioned Maring on the items discovered in CAMPBELL's cell and whether or not Maring had any true knowledge of whether or not they could be used to facilitate escape. Further, he questioned Maring as to the whereabouts of the items at this current date. These questions were specific in reference to the individual items as referenced in the incident report. The DHO believed, in relation to Maring's knowledge of the discovered items and their potential uses were adequately referenced in his incident report of July 31, 2012. In referencing any specific knowledge of whether any of these items could be truly used as

---

[2]The Court notes that an inmate in a prison disciplinary proceeding has no constitutional right to counsel. Wolff, 418 U.S. at 570.

noted in questioning by CAMPBELL in his written statement, the DHO acknowledged that no testing of any of these items were provided as documentation. With this, to truly know whether or not these items could be used to facilitate escape was unknown, Additionally, the actual locations of the items at this current date was viewed as of no consequence. Photographic evidence provided evidence of the discovered contraband. All considered, Maring was not called as a witness or requested to provide additional information due to the aforementioned.

(Doc. 7-1 at 30). As to witnesses being denied, the record reflects that the DHO met with Campbell prior to the rehearing to discuss the sixteen (16) witnesses requested by Petitioner. In determining that a majority of the witnesses would being offering "seemingly repetitive testimony", the DHO permitted Campbell the opportunity to call three (3) witnesses from the list. (Doc. 7-1 at 30). Thus, the Court finds DHO's refusal to call these witnesses in line with the Supreme Court's opinion in Wolff. As the Court stated, "Although we do not prescribe it, it would be useful for the [DHO] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." Wolff, 418 U.S. at 566. Inmates do not have an "unqualified right to call witnesses." Id. As such, the Court concludes that the DHO's refusal to call Maring and the other requested witnesses, did not deprive Campbell of his right to due process.

Campbell further argues the DHO decision was not based on the

greater weight of the evidence, and that the DHO failed to consider his written statement, in that he "accepted it from Mr. Neylon only at the conclusion of the hearing, but did not look at it in our presence and did not refer to it in his report, even though he referred to proposed witness questions given to him at the same time" and the DHO misquoted Campbell's oral statement that "the officer rethought what the tools were after finding the hole", by stating "the reporting Officer Maring found the tools in the hole so he rethought what the hole was." (Doc. 1, petition).

To the extent Campbell would allege there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d

Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of both testimony offered and documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition, the DHO clearly stated that the documentary evidence relied upon consisted of Petitioner's written statement, as well as the investigative

report, witness statements, staff emails and photographs. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO. Petitioner has failed to proffer any sufficiently credible contradictory evidence other than his unsupported, conclusory statement, that the DHO failed to consider his written statement and his argument of semantics in claiming that the DHO quoting the word "hole" as opposed to "tool". Accordingly, the Court finds that the procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of one 100-level, high severity level prohibited act, and one 300-level, moderate severity level prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 100-level offenses:

A.    Recommend parole date rescission or retardation.
B.    Forfeit and/or withhold earned statutory good time or

non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 12 months)

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job

J. Impound inmate's personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

The following are the sanctions available for 300-level offenses:

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 3 months)

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I.   Loss of job
J.   Impound inmate's personal property.
K.   Confiscate contraband.
L.   Restrict to quarters.
M.   Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, Campbell's challenge to Incident Report No. 2333932 are denied.

## B. Incident Report No. 2333936

Plaintiff argues that the UDC/DHO proceedings were invalid for Incident Report No. 2333936 and that the Discipline Hearing Officer's decision was not based on fact or the greater weight of evidence.

Campbell received written notice of the charged misconduct when he was given a copy of the incident report on August 1, 2012 at 2:01 p.m., within 24 hours of the July 31, 2012 incident.[3] Campbell's UDC hearing was conducted on August 6, 2012, within three working days after the incident

---

[3]To the extent Campbell alleges the incident reports pertaining to the same set of events should have been addressed in one incident report instead of two, Program Statement 5270.09, Inmate Discipline Program describes the discipline process including the initiation of the process by writing the inmate an incident report. There is nothing in the policy that precludes separate incident reports for different violations arising out of the same conduct. (see Doc. 7-1, Inmate Discipline Program).

22

report was written. The UDC advised Campbell of his rights throughout the disciplinary process and permitted him to request a staff representative and witnesses. It was noted that Campbell's attitude was fair. When he received a copy of the written report, he stated "No comment". Campbell did request a staff representative but did not request any witnesses. He only requested that someone view the camera. Due to the severity of the charge, the UDC referred the matter to the DHO.

Petitioner's DHO hearing was held on October 17, 2012, more than twenty-four hours after Campbell was notified of the charges. Campbell appeared before an impartial hearing body, where he was represented by Lt. Thomas. Although Campbell had the ability to call witnesses and present documentary evidence, he chose only to make the statement that "This is a tool, not a weapon."

Campbell argues that there was not enough evidence to find he had committed the prohibited act. Specifically, he argues that, rather than relying on the actual weapon at issue, which Petitioner claims "did not possess fine points or keen edges," the DHO relied on photographs of the weapon, to conclude that the weapon was a "sharpened instrument capable of inflicting serious life-threatening injuries and death." A DHO need not accept what the

inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id. Thus, in relying on the incident report and the photographs, the DHO's decision was supported by "some evidence", in finding Campbell guilty of possession of a weapon. Accordingly, the Court finds that the procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 100-level, high severity level prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 100-level offenses:

A.    Recommend parole date rescission or retardation.
B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.    Disciplinary segregation (up to 12 months)
D.    Make monetary restitution.
E.    Monetary fine.
F.    Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
G.    Change housing (quarters).
H.    Remove from program and/or group activity.
I.    Loss of job
J.    Impound inmate's personal property.
K.    Confiscate contraband.
L.    Restrict to quarters.
M.    Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, Campbell's challenge to Incident Report No. 2333936 are denied.

## III. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 21, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0524-01.wpd